BRISCOE, Circuit Judge,
concurring.
While I agree with the outcome here, I differ in the analysis of Tyson’s challenge to his 1999 reinstatement order.
Tyson contends the notice to reinstate the 1992 deportation order was invalid because it constituted an impermissibly retroactive application of a 1996 amendment to the INA (brought about by enactment of the IIRIRA), § 245(a)(1), to an act that occurred in 1993, i.e., his illegal reentry into the United States. The majority concludes the district court lacked habeas jurisdiction to review Tyson’s claim because he failed to exhaust his avenues for direct appeal of that order. I would not conclude that failure to exhaust is a bar here, but would conclude instead that the district court had jurisdiction pursuant to 28 U.S.C. § 2241 to entertain that portion of Tyson’s petition that sought to challenge the INS’ notice of intent to reinstate the prior deportation order, but only to the extent that Tyson sought to challenge the INS’ legal determinations. On the merits of that challenge, however, Tyson fails.
Tyson argues that, under INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and Riley v. INS, 310 F.3d 1253 (10th Cir.2002), habeas jurisdiction remains available to him because he raises questions of law and he would otherwise have no available judicial forum for raising those questions. In St. Cyr, the Supreme Court held that “habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA [both of which made significant changes to the INA],” and thus a criminal alien could use § 2241 to collaterally challenge a final order of removal. 533 U.S. at 314, 121 S.Ct. 2271. In Riley, this court, agreeing with the Second and Third Circuits, concluded that federal courts also retain § 2241 habeas jurisdiction over petitions from non-criminal aliens. 310 F.3d at 1255-56.
The government argues that “St. Cyr does not control” because “Tyson could have sought review directly in this Court.” Aplee. Br. at 26.[1] While it is true Tyson *43 could have sought direct “judicial review” in this court of the INS’ decision to reinstate, the availability of such a proceeding does not mean that Tyson was deprived of the opportunity to seek federal habeas review of that same decision. Indeed, St. Cyr expressly rejected this very argument. Tyson’s failure to seek direct “judicial review” in this court is not, however, without consequence. Direct “judicial review” in this court would have allowed Tyson to raise a larger range of issues than are available to him in a habeas corpus proceeding. In contrast, habeas jurisdiction is generally limited to reviewing the INS’ “legal determinations,” and its underlying “factual determinations” are generally unreviewable. St. Cyr, 533 U.S. at 306, 121 S.Ct. 2271. Therefore, the district court had jurisdiction pursuant to § 2241 to address Tyson’s legal challenges of the INS’ notice of intent to reinstate the prior deportation order.
Tyson contends the notice to reinstate the 1992 deportation order was invalid because it constituted an impermissibly retroactive application of a 1996 amendment to the INA (brought about by enactment of the IIRIRA), § 245(a)(1), to an act that occurred in 1993, i.e., his illegal reentry into the United States. In support of this contention, Tyson argued in his pro se appellate brief that retroactive application of INA § 245(a)(1) deprived him of various procedural rights that existed at the time he illegally reentered the United States. In particular, Tyson alleged he was denied the right to a hearing before an immigration judge, a right to appeal to the Board of Immigration Appeals, a right to develop a record or place any information in the administrative record, and a right to assistance of counsel. In the supplemental appellate brief, Tyson’s appointed counsel asserts, for the first time, that the notice of reinstatement (because of application of the amended provisions of the INA to Tyson) denied Tyson “at least three substantive defenses to removal that could have been asserted in a reinstatement of deportation order proceeding under former section 242(f): 1) discretionary relief under former section 212(c); 2) discretionary relief under section 212(h); and 3) collateral challenges to the 1992 deportation order.” Aplt. Supp. Br. at 24.
The key question is whether the new procedures implemented by § 241(a)(5) can permissibly be applied to Tyson, even though he reentered the United States prior to enactment of § 241(a)(5). The answer to this question requires application of Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In Landgraf, the Supreme Court set forth a two-step test for determining whether a federal statute applies retroactively to conduct occurring before its enactment. Under the first step, a court must “determine whether Congress has expressly prescribed the statute’s proper reach.” Id. at 280, 114 S.Ct. 1483. In doing so, a court may look to the express language of the statute, but may also use traditional tools of statutory construction. See Lindh v. Murphy, 521 U.S. 320, 325-26, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). If it is determined that Congress clearly expressed its intent as to the statute’s retroactivity, the inquiry ends. Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. *44 If the court is unable to discern Congress’ intent, however, the court must proceed to the second step, which requires it to determine whether application of the statute to past conduct “would have retroactive effect.” Id. A statute has an impermissible retroactive effect when “it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” Id. If the court determines the statute would have an impermissible retroactive effect if applied to past conduct, the statute must be applied prospectively only. Id.
I have found at least seven circuits that have addressed the very question raised by Tyson, i.e., whether INA § 241(a)(5) can be applied retroactively to illegal reentries that occurred prior to its effective date. Although all have applied the Landgraf analysis, the outcomes are split. The Sixth and Ninth Circuits have concluded that INA § 241(a)(5) cannot be applied retroactively to such illegal reentries, i.e., the INS cannot file a notice of intent to reinstate an order of deportation if the illegal reentry occurred prior to the effective date of § 241(a)(5). See Bejjani v. INS, 271 F.3d 670, 677-78 (6th Cir.2001); Castro-Cortez v. INS, 239 F.3d 1037, 1040 (9th Cir.2001). In contrast, the First, Fourth, Fifth, Eighth, and Eleventh Circuits have concluded that INA § 241(a)(5) can be applied retroactively to illegal reentries occurring before its effective date. See Sarmiento Cisneros v. United States Attorney Gen., 381 F.3d 1277, 1284-85 (11th Cir.2004); Arevalo v. Ashcroft, 344 F.3d 1, 13-14 (1st Cir.2003); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 299-300 (5th Cir.2002); Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 864 (8th Cir.2002); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 103 (4th Cir.2001). However, the Eighth Circuit has also held that § 241(a)(5) cannot be applied in a manner that would eliminate a substantive defense otherwise available to an alien who illegally reentered before the statute’s effective date. Alvarez-Portillo, 280 F.3d at 867. Further, the First and Eleventh Circuits have held that § 241(a)(5) cannot be applied to an illegal reentrant who requested discretionary relief before § 241(a)(5) took effect. Sarmiento Cisneros, 381 F.3d at 1284; Arevalo, 344 F.3d at 4. Together, these cases outline, in exhaustive detail, the arguments for and against retroactive application of § 241(a)(5) under the Landgraf framework. With respect to the first step of the Landgraf analysis, none of these courts have concluded that Congress clearly intended that § 241(a)(5) be applied retroactively. Instead, they have either concluded that (1) Congress clearly intended that § 241(a)(5) would not be applied retroactively, or (2) that Congress’ intent was unclear. Although it is perhaps a close question, I would side with the latter conclusion, i.e., there is no sufficiently clear expression of congressional intent regarding the retroactivity of § 241(a)(5).
The courts that have reached and decided the second step of the Landgraf analysis have generally agreed that the basic procedural aspects of § 241(a)(5) do not have an impermissible “retroactive effect.” Most notably, in Alvarez-Portillo, the Eighth Circuit concluded that § 241(a)(5)’s denial of a hearing before an immigration judge did not have a retroactive effect because “[ijllegal reentrants have no entitlement to such delays and no reasonable expectation that prior inefficiencies in the administration of our immigration laws would continue indefinitely.” 280 F.3d at 866. Likewise, the Eighth Circuit concluded that “[wjhether a removal proceeding commenced after IIRIRA’s effective date results in a new deportation order, or the reinstatement of the prior order, is a change that is entirely procedural and *45 prospective” because “[n]o illegally reentering alien has a reasonable expectation that his prior deportation order will not be reinstated for purposes of effecting a second removal.” Id. at 865. Lastly, the Eighth Circuit concluded that § 241(a)(5)’s prohibition on reopening or reviewing a prior order of removal was “entirely procedural and prospective” because “[ijllegally reentering aliens have no reasonable expectation that they will be entitled to collaterally attack their prior, final deportation orders in a subsequent removal proceeding.” Id. at 866.
That leaves only the question of whether § 241(a)(5) can be applied to eliminate substantive defenses that an illegally reentering alien had prior to the effective date of § 241(a)(5). Section 241(a)(5) provides, in pertinent part, that an alien subject to reinstatement “may not apply for any relief under this chapter.” Here, it is uncontroverted that Tyson made no attempt, following his illegal reentry in 1993, to seek discretionary relief from the INS (thus distinguishing this case from Arevalo ). Nevertheless, Tyson argues § 241(a)(5) had an impermissible retroactive effect when applied to him because (1) it deprived him of various procedural rights otherwise available under the prior law; and (2) it denied “at least three substantive defenses to removal that could have been asserted in a reinstatement of deportation order proceeding under former section 242(f).” Aplt. Supp. Br. at 24.
In light of the decisions of the First, Fourth, Fifth, Eighth, and Eleventh Circuits, there appears to be no merit to Tyson’s arguments regarding deprivation of procedural rights. His argument that he was deprived of substantive defenses requires a closer examination of each defense he allegedly could have asserted. Although Tyson argues he was deprived of the opportunity to collaterally challenge the 1992 deportation order, that precise argument was rejected in Alvarez-Portillo, 280 F.3d at 866 (“Illegally reentering aliens have no reasonable expectation that they will be entitled to collaterally attack their prior, final deportation orders in a subsequent removal proceeding.”). That leaves Tyson’s assertion that he could have sought and obtained discretionary relief under former sections 212(c) (permitting the Attorney General to waive deportation for excludable aliens) and 212(h) (permitting the Attorney General to waive deportation for certain aliens otherwise excludable on the basis of criminal conviction). With respect to his § 212(c) argument, it is important to note that Tyson previously sought and was denied relief under § 212(c) during his 1992 deportation proceedings. In light of that fact, he has failed to convincingly explain why he would have had a reasonable expectation of obtaining discretionary relief under that same section at the time he illegally reentered the United States in 1993. As for his argument that he could have sought and obtained relief under former § 212(h), the record indicates that Tyson had at least five controlled substance convictions on his record, two of which involved the sale or attempted sale of controlled substances. Conviction of a drug offense rendered an alien statutorily ineligible for relief under former § 212(h) unless it was “a single offense of simple possession of 30 grams or less of marijuana.” 8 U.S.C. § 1182(h). Tyson was clearly ineligible for discretionary relief under former § 212(h).

. The government offers other arguments as to why habeas jurisdiction is unavailable to Tyson, but virtually all of those arguments have been foreclosed by St. Cyr. For example, the government argues 8 U.S.C. § 1252(b)(9), *43 which indicates there is "no judicial review in deportation cases unless this section provides judicial review,” strengthens its argument that § 1252(a)(1) is the exclusive procedure by which Tyson can seek federal court review of the notice to reinstate the prior deportation order. In St. Cyr, however, the Supreme Court stated "that § 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." 533 U.S. at 314, 121 S.Ct. 2271.