PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LUIS GALVEZ PIÑEDA, JR.;
MARIA EVELYN ROQUE PIÑEDA;
JOHANNA ROQUE PIÑEDA;
ROBINSON ROQUE PIÑEDA;
DARWIN ROQUE PIÑEDA; AMIEL
ROQUE PIÑEDA,

    Petitioners,

    v.

ALBERTO R. GONZALES, United
States Attorney General,[*]

    Respondent.

No. 03-9501 and 04-9590

---

**PETITIONS FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS
(B.I.A. NOS. A78-578-577; A78-578-578;
A78-578-579; A78-578-580; A78-578-581; A78-578-582)**

---

Jeff Joseph (Jennifer Kain-Rios with him on the brief), Joseph Law Firm, P.C.,
Denver, Colorado, for Petitioners.

Melissa Neiman-Kelting, Attorney (Mary Jane Candaux, Senior Litigation
Counsel, Peter D. Keisler, Assistant Attorney General, Richard M. Evans,
Assistant Director, and Thomas B. Fatouros, Attorney, with her on the briefs),

---

[*]On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as a
Respondent in this action.

Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C, for Respondent.

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

This case deals with two separate petitions by Mr. Luis Galvez Piñeda and his family for review of decisions by the Board of Immigration Appeals (BIA or Board). The First Petition seeks review of the BIA's summary dismissal of the Piñedas' appeal for failure to file a brief, and the Second Petition seeks review of the BIA's denial of their motion to reopen as untimely. We affirm both decisions of the BIA.

Mr. Piñeda entered the United States on a visitor's visa on July 28, 1999, and his wife and four teenaged children followed several months later. After remaining past the time allowed on their visas, the Piñedas applied for asylum and withholding of removal. On November 13, 2001, the immigration judge (IJ) denied the applications and ordered them removed to the Philippines. They filed a timely notice of appeal with the BIA. When their counsel failed to file a brief in support of the appeal, after indicating on the notice-of-appeal form that they would do so, the BIA summarily dismissed the appeal on December 9, 2002, as authorized by 8 C.F.R. § 1003.1(d)(2)(E) (formerly 8 C.F.R. § 3.1(d)(2)(i)(E)).

The Piñedas then acquired new counsel and on June 22, 2004, filed a motion to reopen with the BIA, claiming that their first counsel's ineffective assistance on appeal had deprived them of due process. *See* 8 C.F.R. § 1003.2(c). The BIA denied that motion because it was not filed within the 90-day period set by 8 C.F.R. § 1003.2(c)(2), and the Piñedas had not shown sufficient diligence to justify equitable tolling of the period.

Both the First and Second Petitions challenge final orders of removal that are subject to our review under 8 U.S.C. § 1252(a)(1). *See Infanzon v. Ashcroft*, 386 F.3d 1359, 1361–62 (10th Cir. 2004) (the BIA's denial of a motion to reopen "is considered a final, separately appealable order"). The petitions have been consolidated as required by 8 U.S.C. § 1252(d)(6).

I.      FACTS

A.      Background

Mr. Piñeda, his wife, Maria, and their children, Johanna, Robinson, Darwin and Amiel, are all natives and citizens of the Philippines. Mr. Piñeda was a successful businessman, prominent in his community.

The asylum claim stems from Mr. Piñeda's alleged contacts with the New People's Army (NPA), a communist organization that operates in many areas of the Philippines. According to Mr. Piñeda, beginning in late 1984 and continuing until his departure for the United States in 1999, the NPA made a series of

demands, more aggressive and threatening over time, for "assistance" in the form of weapons, monetary payments, and other material goods. He testified before the IJ that one particularly threatening confrontation with a representative of the NPA caused him to take refuge with a relative in Manilla and then travel to the United States in January 1999. He returned to the Philippines that July but stayed for only a few days, again going to the United States after he determined that the threat remained. His family followed between May and June 2000.

**B.      Administrative Proceedings**

On June 27, 2000, the Piñedas filed applications for asylum and withholding of removal, claiming past persecution of Mr. Piñeda on account of his political opposition to the NPA and on account of his membership in a particular social group, namely, business owners who are subject to extortion from the NPA and whom the government is unwilling or unable to protect. On November 13, 2001, the IJ conducted a hearing and denied the applications for asylum and withholding of removal. Relying on a BIA precedent, the IJ held that the continual demand for money in the form of a revolutionary tax did not constitute persecution on account of political opinion because the political opinion of the target was irrelevant to the demand. The IJ also found some of Mr. Piñeda's story "difficult to believe." R. at 167.

The Piñedas' attorney filed a timely notice of appeal with the BIA on December 12, 2001. The notice briefly stated several grounds for appeal, including the IJ's failure to find a well-founded fear of persecution and failure to address the asylum claim based on membership in a particular social group. Box 6 on the notice-of-appeal form was checked to indicate that the Piñedas would "file a separate written brief or statement." *Id.* at 154. Following that box on the form is a conspicuous warning that failure to file the promised brief or explain the failure to do so could result in summary dismissal of the appeal.

The BIA sent out a briefing schedule indicating that the Piñedas had until April 15, 2002, to submit a brief in support of their appeal. On December 9, 2002, not having received a brief, the BIA summarily dismissed the appeal. The Piñedas' attorney filed a timely petition for review with this court.

## C. Change of Counsel

After repeated, unsuccessful efforts to contact his attorney, Mr. Piñeda obtained a new attorney, who also tried unsuccessfully to contact the first attorney to obtain the Piñedas' file. New counsel (who is also present counsel) ultimately received a copy of the administrative record from this court on December 16, 2003.

The Piñedas' present counsel filed a brief in support of the First Petition, arguing that ineffective assistance of counsel prevented them from obtaining a

fundamentally fair hearing on the merits of their appeal, and challenging the merits of the IJ's decision on several grounds. Counsel also initiated steps toward reopening the appeal to the BIA on the ground of ineffective assistance of counsel. In compliance with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), he filed a complaint against the first attorney with the Colorado Supreme Court Attorney Regulation Counsel. And on June 22, 2004, he filed a motion to reopen with the BIA. On August 24, 2004, the BIA denied that motion as untimely because it had not been filed within 90 days of the Board's original decision, as required by 8 C.F.R. § 1003.2(c)(2). It rejected equitable tolling of the 90-day period for the following reasons:

> Equitable tolling of the motions deadline is unavailable when a party fails to exercise due diligence on his own behalf. The pending motion was filed over a year late. The [Piñedas] claim that they were unaware of former counsel's ineffective assistance until they consulted with the attorney who signed the pending motion, but failed to enter his appearance with the Board. Yet the attorney who signed the pending motion began representing the [Piñedas] on October 15, 2003, according to a letter he wrote to the Colorado Supreme Court Attorney Regulation Counsel. Even so, this motion was not submitted for 8 more months. As *Riley v. INS*, [310 F.3d 1253 (10th Cir. 2002),] requires, we have considered that the [Piñedas] have complied with the procedural requirements for making a claim of ineffective assistance of counsel . . . . However, the [Piñedas] have not shown due diligence in presenting their claims in the pending motion, where the motion was not filed for many months after new counsel was consulted. The [Piñedas] state that they did not become aware of former counsel's ineffective assistance of counsel until current counsel received a copy of the

administrative record. However, the [Piñedas] do not state when this occurred. Exhibits submitted with the motion indicate that counsel who signed the pending motion submitted a brief to the Tenth Circuit Court of Appeals on February 6, 2004, after receiving the administrative record. The pending motion was not filed for another four months.

R. at 2–3 (internal citations and quotation marks omitted). The Piñedas' Second Petition in this court seeks review of that denial.

## II. DISCUSSION

### A. Summary Dismissal of Appeal

The Piñedas' First Petition challenges the BIA's adverse ruling on their appeal from the IJ's removal order. Much of their brief to this court points to alleged errors by the IJ. But procedural bar precludes the Piñedas from raising these claims. Their failure to comply with the BIA's requirement that they file their promised brief, *see* 8 C.F.R. § 1003.1(d)(2)(E), led to the BIA's dismissal of their appeal. On a petition for review to this court we will not permit the petitioner to circumvent proper procedural requirements of the BIA by presenting contentions that were procedurally barred by the Board.

The Piñedas, however, have presented two arguments to overcome this procedural bar. First, at oral argument the Piñedas claimed that the BIA improperly imposed its briefing requirement in their case. They contended that the BIA abused its discretion in not considering the appeal on the basis of the grounds presented in the notice of appeal itself. But because this claim did not

appear in their briefs to us, we will not address it. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 n.5 (10th Cir. 1997).

Their second argument, which they did brief, is that they were denied due process by the ineffective assistance of prior counsel in failing to file a brief in support of their appeal to the BIA. They argue that this failure is cause to overturn the BIA's summary dismissal and remand to the BIA for proceedings on the merits. But this claim of ineffective assistance of counsel cannot be heard by this court in the first instance. Before we hear the issue the Piñedas must exhaust their administrative remedies with the BIA. "[B]ecause the Board has created in *Lozada* a mechanism for hearing due-process based claims of ineffective assistance of counsel, such claims must first be presented to the Board." *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002). The appropriate method of presentation is a motion to reopen the case before the BIA. *See Soberanes v. Comfort*, 388 F.3d 1305, 1309 (10th Cir. 2004) ("[T]he means for administratively correcting an instance of ineffective assistance of counsel is a motion to reopen . . . ."). Failure to exhaust administrative remedies by not first presenting a claim to the BIA deprives this court of jurisdiction to hear it. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir. 1999).

To be sure, after submitting their First Petition to this court, the Piñedas presented their ineffective-assistance-of-counsel claim to the BIA in a motion to

reopen. But, as discussed below, that motion was untimely. We have recognized in a variety of contexts that untimely filings with administrative agencies do not constitute exhaustion of administrative remedies. *See, e.g., Patel v. Fleming*, 415 F.3d 1105, 1109, 1112 (10th Cir. 2005) (section 1983 litigation under the Prisoner Litigation Reform Act); *Esposito v. United States*, 368 F.3d 1271, 1274 (10th Cir. 2004) (Federal Tort Claims Act); *Harms v. IRS*, 321 F.3d 1001, 1009-10 (10th Cir. 2003) (untimely appeal to the Merit Systems Protection Board). The Piñedas' untimely motion to reopen does not satisfy the exhaustion requirement. Accordingly, we lack jurisdiction to review the Piñedas' ineffective-assistance claim and dismiss the First Petition to the extent that it raises that claim.

## B. Denial of Motion to Reopen

The BIA denied the Piñedas' motion to reopen as untimely. "We review the BIA's decision on a motion to reopen for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) (internal citations and quotation marks omitted). On the other hand, there is no abuse of discretion when "although the BIA's decision is succinct, its rationale is clear, there is no departure from established policies,

and its statements are a correct interpretation of the law." *Infanzon*, 386 F.3d at 1362.

To avoid unnecessary delay in immigration proceedings, motions to reopen must be brought promptly. "An alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). The 90-day period may be extended, however, by equitable tolling. *See Riley v. INS*, 310 F.3d 1253, 1258 (10th Cir. 2002). To determine whether tolling is appropriate, "[a] simple cursory comparison of the date of filing and the regulatory time line for filing motions is not enough. Specifically, the BIA must review Appellant's due diligence along with his attempts to comply with the BIA's requirements detailed in *Matter of Lozada* . . . ." *Id.*

Here, the BIA dismissed the Piñedas' appeal of the IJ's decision on December 9, 2002. The period for filing the motion to reopen expired 90 days later, on March 9, 2003. The motion to reopen was filed on June 22, 2004. The Piñedas contend that the BIA did not properly consider their diligence when it rejected their argument for equitable tolling. We disagree.

The government concedes that tolling would be appropriate up to the point at which the Piñedas knew or should have known of prior counsel's

ineffectiveness. The Piñedas in turn concede that this point was reached in December 2003, when present counsel received a copy of the administrative record in the case and discovered that prior counsel had received a briefing schedule from the BIA with which he had not complied. Based on these two concessions, the motion would not have been due before March 2004. Even that date, however, is three months before the motion was actually filed on June 22, 2004.

The Piñedas make essentially two arguments for further equitable tolling. First, they claim to have exercised due diligence by pursuing the First Petition before this court. Second, they argue that the additional time was necessary to establish the prerequisites set forth in *Lozada* for the filing of the motion to reopen. *See Mickeviciute*, 327 F.3d at 1162 n.2 (*Lozada* requires that a motion based on a claim of ineffective assistance of counsel be supported by (1) an "affidavit setting forth the agreement that was entered into with former counsel"; (2) "evidence that former counsel was informed of the allegations and allowed the opportunity to respond"; and (3) "evidence [that] the aggrieved party filed a complaint with appropriate disciplinary authorities."). We are not persuaded.

Pursuit of the First Petition in this court does not establish the requisite diligence—diligence in pursuing the motion to reopen. Timeliness can be critical in immigration cases. Removable aliens are not permitted to delay matters by

-11-

pursuing multiple avenues of relief seriatim when no reason suggests why they could not be pursued simultaneously. Present counsel filed the opening brief regarding the First Petition on February 6, 2004. The Piñedas claim that it was only after receiving the respondent's answer brief (filed with this court on March 12, 2004) that they made a "strategic decision" to file a grievance against their first counsel and a subsequent motion to reopen. Pet'r Br. Second Pet. at 50. But that is precisely the point. It was a "strategic decision," not necessity, that led them to forgo a motion to reopen at the outset and rely solely on the First Petition, "expecting that this court would directly address" the merits of that petition. *Id.* at 51. We have not been given any reason why counsel could not have been preparing the *Lozada* grievance and the motion to reopen while pursuing the First Petition. Furthermore, even a determination of diligence up to March 12 would be insufficient, as it was still more than 90 days thereafter that the motion was filed.

The Piñedas' second argument is that they needed the additional time to comply with *Lozada* before filing the motion to reopen. But 90 days would have been more than adequate to comply. And had the Piñedas been unable to fulfill all the *Lozada* requirements within 90 days, they could still have filed the motion and explained any unavoidable delay. *See Lozada*, 19 I. & N. Dec. at 639 (requiring that the motion "reflect whether a complaint has been filed with the

-12-

appropriate disciplinary authorities regarding such representation, and if not, why not").

Thus, the record before us amply supports rejection of the equitable-tolling argument on essentially the grounds stated by the BIA. To be sure, the BIA when it ruled did not know the precise date on which the Piñedas had received the administrative record, noting only that it must have been some time before the filing of their February 6, 2004, opening brief with this court. But any absence of evidence favorable to equitable tolling was the Piñedas' fault, as they had the burden of persuasion on the motion to reopen. Moreover, the BIA gave them every benefit of the doubt by noting that even February 6 was more than 90 days before the filing of the motion. The BIA did not abuse its discretion in denying the motion to reopen.

## III.   CONCLUSION

Because the Piñedas failed to exhaust their administrative remedies by first presenting their ineffective-assistance-of-counsel claim to the BIA, we DISMISS the First Petition insofar as it raises that claim; in all other respects we DENY the First Petition, AFFIRMING the BIA's summary dismissal. We DENY the Second Petition and AFFIRM the BIA's denial of the Piñedas' motion to reopen.